**UNITED STATES, Appellee,**

v.

**Specialist Kenneth C. VAN METRE, 002–54–8446, United States Army, Appellant.**

**ACMR 8802787.**

U.S. Army Court of Military Review.

2 Nov. 1989.

For Appellant: Lieutenant Colonel Russell S. Estey, JAGC, Captain Jay S. Eiche, JAGC (on brief).

For Appellee: Colonel Alfred F. Arquilla, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Captain Martin D. Carpenter, JAGC, Captain Timothy J. Saviano, JAGC (on brief).

Before MYERS, JOHNSON and NEURAUTER, Appellate Military Judges.

## OPINION OF THE COURT

NEURAUTER, Judge:

Pursuant to his pleas, appellant was convicted by a military judge sitting as a special court-martial of aggravated assault and communicating a threat in violation of Articles 128 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 928 and 934 (1982) [hereinafter UCMJ]. The convening authority approved the adjudged sentence of a bad-conduct discharge, confinement for eighty days, forfeiture of $440.00 pay per month for six months, and reduction to Private E1.

Appellant now asserts that the military judge erred in denying appellant's motion requesting additional administrative credit based on the imposition of illegal pretrial punishment in violation of Article 13, UCMJ, 10 U.S.C. § 813. We conclude that the military judge correctly denied the motion and affirm.

During the early morning hours of 13 October 1988, appellant was apprehended for the offenses which are the subject of this court-martial and placed in a temporary detention cell until sometime that same afternoon when he was released to his unit. At that time, appellant's commander, Captain (CPT) V. served on appellant a letter, entitled "SUBJECT: Letter of Restriction," which outlined certain conditions on appellant's liberty, including: the withdrawal of civilian clothing and the mandatory wearing of the battle dress uniform (BDU) at all times; requiring that appellant move to a room in the barracks normally occupied by transients; allowing appellant to possess only his uniforms, personal hygiene items and an alarm clock in the room; limiting his visitation with his wife to a two-hour period each evening in the barracks' day room; requiring appellant to stay in his room except from 1900 until 2100 each day when he was allowed to go to the day room, when he was at his appointed place of duty, or when at the dining facility or chapel; requiring appellant to maintain a log of all his activities; and to sign in and out with the Charge of Quarters (CQ) when going to the chapel or dining facility. In addition, a twenty-four hour "escort" was posted outside appellant's room and would accompany him everywhere, including the latrine and unit day room. These conditions remained substantially in effect until 1 November 1988 when the escort requirement was dropped and appellant was allowed far greater freedom of movement.

The military judge found that the period of restriction from 13 October until 1 November was under conditions that were tantamount to confinement and ordered that appellant receive forty days of administrative credit toward his sentence. *See United States v. Mason,* 19 M.J. 274 (C.M.A.1985) and *United States v. Gregory,* 21 M.J. 952 (A.C.M.R.1986).

The same letter that outlined the conditions for appellant's restriction also provided that a "Honor Guard" tab [1] be removed from appellant's BDU's. This tab, along with the United States Army, Europe (USAREUR) patch, was removed from the left sleeve of appellant's uniforms on 13 October. The commander, CPT V., testified that all soldiers assigned to that company were authorized to wear the special tab and stated that he had not previously ordered its removal from any other soldier's uniform. CPT V. explained that he ordered removal of the tab to ensure that appellant would not embarrass the unit in

---

1. According to testimony in the record, the appellant's unit, the 529th Military Police Company, functions as an Honor Guard Company for certain functions and ceremonies that involve the Commander in Chief, USAREUR, or his deputy.

the event he broke restriction and left the installation. The USAREUR patch was initially removed because its position on the sleeve would change without the honor guard tab. CPT V. stated that although he did not order removal of the USAREUR patch, he instructed appellant's supervisors to ensure the USAREUR patches were sewn back on the uniforms once he learned of their removal. However, this was not accomplished until the day prior to appellant's trial. He thus appeared at his trial with the USAREUR patch but without the honor guard tab.

Appellant now claims that the removal of the tab from his uniforms, under the circumstances, was illegal punishment under Article 13, UCMJ. He further asserts that the facts of his case are similar to those that occurred in the case of *United States v. Cruz*, 25 M.J. 326 (C.M.A.1987). On that basis, appellant is asking that this court not affirm the bad-conduct discharge or, in the alternative, grant appellant pay credit for twenty days of illegal pretrial punishment.

Article 13, UCMJ, states that:

No person, while being held for trial, may be subjected to punishment or penalty other than arrest or confinement upon the charges pending against him, nor shall the arrest or confinement imposed upon him be any more rigorous than the circumstances require to insure his presence, but he may be subjected to minor punishment during that period for infractions of discipline.

*Cruz* provides an informative analysis of the types of punishments or penalties that would be prohibited by Article 13, UCMJ. In that case, at a mass formation of approximately 1200 soldiers, then Sergeant Cruz, along with forty other soldiers, was called out of the formation and escorted to a platform to face the Division Artillery Commander. Most of the soldiers thereupon had their unit crests removed, and were required to render a salute to the commander which was not returned. They were then marched as a group to an area in full view of the remaining troops where they were individually searched and hand-cuffed by law enforcement authorities. *Cruz*, 25 M.J. at 328. Based on these facts, the Court of Military Appeals held that "[c]learly, public denunciation by the commander and subsequent military degradation before the troops prior to courts-martial constitute unlawful pretrial punishment prohibited by Article 13." *Cruz*, 25 M.J. at 330.

In light of CPT V.'s testimony that all soldiers in his unit were entitled to wear the tab, we cannot condone its removal from appellant's uniform. There is no showing in this case, however, of a commander's specific design to humiliate or ridicule the appellant. Certainly, it does not appear that appellant was degraded or humiliated in front of his fellow soldiers other than that normally associated with any accused who remains in the unit pending a court-martial. There was no public denunciation of appellant, and, as several witnesses stated, the honor guard tab was originally removed in anticipation of appellant being placed in pretrial confinement, although the commander, CPT V., made removal of the tab a part of the conditions of the restriction imposed on 13 October. There is no evidence to indicate that appellant was maltreated or ostracized by his fellow soldiers during the period after removal of the tab. The circumstances of this case, therefore, do not rise to the level of a violation of Article 13, UCMJ. *See also United States v. Walker*, 27 M.J. 878 (A.C.M.R.), *affirmed*, 28 M.J. 430 (C.M.A. 1989).

The findings of guilty and the sentence are affirmed.

Senior Judge MYERS and Judge JOHNSON concur.