UNITED STATES, Appellee,

v.

Jesse M. JAMES, Specialist Four, U.S. Army, Appellant.

No. 60,308.
CM 8701335.

U.S. Court of Military Appeals.

June 26, 1989.

For Appellant: *Captain Jon W. Stentz* (argued); *Lieutenant Colonel Russell S. Estey* (on brief); *Colonel John T. Edwards, Captain Stephanie C. Spahn, Captain Wayne D. Lambert.*

For Appellee: *Captain James K. Reed* (argued); *Colonel Norman G. Cooper, Lieutenant Colonel Gary F. Roberson, Major Daniel J. Dell'Orto* (on brief).

*Opinion of the Court*

COX, Judge:

Appellant was tried by a military judge sitting alone as a general court-martial at Fort Bragg, North Carolina.

On his negotiated pleas, appellant was convicted of (one specification each) unau-

thorized absence, distribution of cocaine, larceny of mail matter, forgery, and wrongful transfer of a treasury check, in violation of Articles 86, 112a, 134, and 123, Uniform Code of Military Justice, 10 USC §§ 886, 912a, 934, and 923, respectively. He was sentenced to 18 months' confinement, forfeiture of $400.00 pay per month for 18 months, reduction to private, and a bad-conduct discharge. The sentence was approved by the convening authority and subsequently affirmed by the Court of Military Review in a short-form opinion.

We granted the petition for review to consider whether the military judge erred by refusing to grant appellant extra credit against his sentence to confinement because of the conditions of his pretrial detention.

Appellant absented himself from a unit at Fort Bragg, North Carolina. He was apprehended in Washington, D.C., terminating his absence. He was placed in pretrial confinement at the Installation Detention Facility, Fort Meade, Maryland; 5 days later he was returned to Fort Bragg. A military magistrate at Fort Bragg found that pretrial detention should be continued.

For reasons not relevant here, the confinement facility on the base had been closed; as an alternative, the Army had entered into a contract with Cumberland County, North Carolina, authorities which provided for the confinement of both pretrial detainees and sentenced prisoners in civilian-county facilities. As a result, appellant was placed in a Cumberland County facility and remained there until the date of trial. Prior to trial, appellant did not complain about his status in the jail or the conditions of confinement.

At trial, appellant moved for additional credit toward the service of his sentence for this period of pretrial confinement under RCM 305(k), Manual for Courts-Martial, United States, 1984. He asserted that

the facilities and programs of the Cumberland County Jail did not meet the standards of Chapters 3 and 4, Army Regulation 190–47, Military Police, The United States Army Correctional System (1 Oct 1978) (AR 190–47). Appellant showed that he was confined with sentenced prisoners; he was not allowed to wear his uniform and insignia of rank; the visitation policy of the jail was more restrictive than that required by AR 190–47; and the recreational facilities were minimal.

The military judge found, and the Government conceded, that the jail did not meet the standards of the regulation.[1] However, the evidence also showed that the jail had been certified by the U.S. Marshal's Service and the Federal Bureau of Prisons for the housing of federal prisoners. Additionally, out of over 4,000 in the United States, the facility was one of only 150 jails that had been inspected and certified by the American Medical Association.

 Pretrial confinement in a civilian jail is subject to the same scrutiny as confinement in a detention facility operated by the military. A servicemember may not be detained under conditions which amount to punishment prior to trial whether the facility is operated by military or civilian correctional personnel. Such confinement may be no more rigorous than is necessary to insure the presence of the detainee for his trial. Art. 13, UCMJ, 10 USC § 813; *United States v. Palmiter*, 20 MJ 90 (CMA 1985).

Article 13 prescribes that "[n]o person ... held for trial, may be subjected to punishment or penalty other than arrest or confinement upon the charges pending against him." It further prescribes that the arrest or confinement "shall [not] ... be any more rigorous than the circumstances require to insure his presence ..." This

1. At some point, the Inspector General for XVIII Airborne Corps published a report on the conditions of confinement. This report, while noting that the conditions of the jail did not meet the standards of AR 190–47, primarily faulted commanders for not making regular command visits to insure that their soldiers were receiving proper treatment. Apparently, proper command action rectified many of the shortcomings found by the Inspector General.

standard is conceptually the same as those constitutionally required by the Due Process Clause of the Constitution. "For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861, 1872, 60 L.Ed.2d 447 (1979) (footnote omitted); *United States v. Destefano*, 20 MJ 347, 349 (CMA 1985).

■ One significant factor, but not the only one, in determining whether the conditions or terms of confinement violate Article 13 is the intent of the detention officials. Thus, "[a] court must decide whether the disability is imposed for ... punishment or whether it is but an incident of some other legitimate governmental purpose." *Bell v. Wolfish, supra* 441 U.S. at 538, 99 S.Ct. at 1873, *citing Flemming v. Nestor*, 363 U.S. 603, 613–17, 80 S.Ct. 1367, 1373–76, 4 L.Ed.2d 1435 (1960). The Court went on to say:

> [I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment....

441 U.S. at 539, 99 S.Ct. at 1874 (footnote omitted).

■ Here, all the complained-of conditions were rationally related to reasonable operating procedures of the facility and were not so "excessive" as to rise to the level of punishment. *Id.* at 538, 99 S.Ct. at 1873.

Appellant has failed to demonstrate that any condition of his confinement was intended as punishment. While he was required to wear an orange jumpsuit instead of his uniform, this was consistent with the internal operating procedures of the jail, and all detainees were required to wear this garb. Although visitation conditions were not as open as they might be in a military facility, there was no evidence that appellant was denied visitors. Other than assisting with the daily cleaning of his cell,[2] appellant was not required to work, and he was permitted to use whatever recreational amenities were available.

From these facts, we conclude that appellant was not singled out for punishment by the imposition of these conditions.[3] From the record it appears that all persons confined in the jail were subject to the same limitations. Each was related to the orderly operation of the facility and was no more stringent than otherwise required to hold appellant until the date of trial.

Finally, appellant did not complain about his detention at the jail until he appeared for trial. In *United States v. Palmiter, supra*, we held that failure to contest the conditions of pretrial detention before a magistrate while the accused is subject to those conditions would be considered "strong evidence that" he "was not illegally punished." 20 MJ at 97. This fact, coupled with evidence that the conditions of confinement were rationally related to operation of the jail, leaves us satisfied that appellant was not subjected to pretrial punishment.[4] Therefore, he is not entitled to

---

2. The "cell" was described as an area of about 995 square feet, "designed to house 16 prisoners." While as many as 30 prisoners may have occupied this open bay, we do not believe that this amounted to punishment *per se.*

3. This case is clearly distinguishable from *United States v. Cruz*, 25 MJ 326 (CMA 1987), where the commander held a number of soldiers up to public ridicule, amounting to degradation, thus committing a violation of Article 13, Uniform Code of Military Justice, 10 USC § 813.

4. We join with the Court of Military Review in *United States v. Walker*, 27 MJ 878 (ACMR 1989), reminding counsel of the obligation to seek relief from the conditions of detention while the accused is actually subject to those conditions. *See United States v. Palmiter*, 20 MJ 90, 96–97 (CMA 1985). While failure to present the question to a military magistrate does not amount to waiver of the issue, it strengthens the Government's argument that it has not violated Article 13.

additional credit for the days he spent in pretrial detention.[5]

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge EVERETT and Judge SULLIVAN concur.

---

5. We note, however, that both trial counsel and the convening authority failed to account for the 5 days of pretrial detention appellant served at the Installation Detention Facility, Fort Meade, Maryland. Appellant is entitled to an additional 5-days' credit toward the service of the approved sentence for this period in addition to the credit given him by the convening authority in taking initial action on the record.